Boreth, Appellant, *v.* Philadelphia Zoning Board of Adjustment.

Argued May 4, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*Herman Toll,* with him *Morton Craine,* for appellant.

*Gordon Cavanaugh,* Assistant City Solicitor, with him *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for Zoning Board of Adjustment, appellee.

OPINION BY MR. JUSTICE COHEN, May 28, 1959:

Mary Boreth, appellant, filed an application for a use registration permit to operate a beauty shop in the basement of her premises. The application was refused and the zoning board, after a public hearing, also refused to issue the permit to her. Thereafter, she took an appeal to the court of common pleas contending that the operation of her beauty shop is a "home occupation" as that term is defined in the Philadelphia ordinance. From an order dismissing her appeal, she took the present appeal.

The appellant is co-owner, with her husband, of premises 1247 Levick Street, Philadelphia, which is located in an area zoned "D" Residential under the zoning regulations. However, a beauty shop is not a permitted use under the regulations set forth in Section 14-207(1) of the Philadelphia Code of General Ordinances.

Despite this, appellant seeks to avail herself of Section 14-216, which provides for accessory uses that are permitted in residential districts. She contends that a beauty shop is a "home occupation" as that phrase is defined in Section 14-102(17): "Any lawful occupation customarily conducted in a dwelling as an incidental use."

In *Gold v. Zoning Board of Adjustment*, 393 Pa. 401, 143 A. 2d 59 (1958), we held that a one-chair barber shop conducted in the basement of premises located in a "D" Residential District in Philadelphia was not a "home occupation" and, therefore, was not permitted as an accessory use. What Mr. Justice ARNOLD said there at pp. 403, 404 is particularly appropriate to the instant case: "Whether this is a use *'customarily conducted'* in a dwelling as an incidental use has not heretofore been determined by this Court. It is to be noted that the use must not only be 'incidental' to, but must

also be 'customarily conducted' in, a dwelling. Thus, that it might be incidental to his living in the home is not sufficient, and merely because he would have only one chair, operate only by appointment, or display no signs, would not determine the matter. A practical and sensible approach to the question leaves no doubt that this is not a customary use of a dwelling, such as sewing or cooking might be. Barbering is a commercial use, and not ordinarily or customarily conducted in a home. It is a business ordinarily conducted in a business shop or building."

The appellant seeks to avoid the impact of that decision by attempting to display factual distinctions applicable to beauty shops as contradistinguished to barber shops. She also urges the similarity between beauty culture and homemaking, millinery work, dressmaking, and sewing as home occupations customarily conducted in a home. These distinctions are not sufficient to merit the abandonment of our decision in the *Gold* case, supra.

Beauty culture treatment today has become an extensive operation in relation to the type of equipment, accouterments, and quarters necessary for this type of enterprise. The operators now have at their disposal a multitude of dyes, lotions, hair dressing preparations and complicated electrical machinery which have characterized this as a commercial operation and not one that is "customarily conducted in a dwelling." Very recently, this Court dealt with State Beauty Culture Law, Act of May 3, 1933, P. L. 242, as amended, 63 P.S. §507 et seq., in the case of *Department of Licenses and Inspections v. Weber*, 394 Pa. 466, 147 A. 2d 326 (1959) and held that the beauticians must comply with both state and city requirements in the operation of their beauty salons. A review of the Philadelphia Code, §6-402, et seq. and the Beauty Culture Law discloses

an intention on behalf of the State Legislature and the Philadelphia City Council to deal with these operations as commercial activities and not as "home occupations." For example, Section 14 of the Beauty Culture Law, Act of May 3, 1933, P. L. 242, as amended, 63 P.S. §520, provides that any room used wholly or in part for a beauty shop cannot be used for residential purposes. In view of this, it is scarcely arguable that this comprises an incidental use that is ordinarily conducted in a home. Moreover, the Philadelphia Code in Section 14-303 (1) (S) specifically provides for the establishment of beauty parlors in "A" Commercial Districts. It appears inconceivable that the legislators intended that this use also be permitted in "D" Residential Districts. Cf. *Bonasi v. Haverford Township Board of Adjustment*, 382 Pa. 307, 115 A. 2d 225 (1955). Moreover, to hold that there is a distinction between barber shops and beauty parlors in view of their essential commercial characteristics is to indulge in gossamer-like distinctions that would do violence to the zoning regulations.

We are here faced with the duty of interpreting the ordinance as written and to use the legislative dictionary set up in this ordinance. See *Sterling v. Philadelphia*, 378 Pa. 538, 106 A. 2d 793 (1954). Even though, after reviewing the record, we deplore the manner in which one of the neighboring protestants sought to stifle the appellant from competing against him under the guise of enforcing the zoning regulations, we must conclude that beauty shops are not "home occupations" within the meaning of the ordinance and the refusal to grant the use registration permit was proper.

Order affirmed.