IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Scott,                          :
                    Appellant       :
          v.                        :   No.  1795 C.D. 2019
                                    :   Submitted:  August 12, 2022
City of Philadelphia, Department    :
of Licenses and Inspections         :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  November 16, 2022

          John Scott (Scott) appeals *pro se* from the November 13, 2019 order of the

Court of Common Pleas of Philadelphia County (Common Pleas), which denied his

appeal and affirmed the decision of the Zoning Board of Adjustment (Board).  The

decision denied Scott's appeal after the City of Philadelphia's (City) Department of

Licenses and Inspections issued a final warning indicating that a property he owned

(Property) violated The Philadelphia Code (Code).  After careful review, we affirm.

                    **I. Background and Procedural History**

          Scott is the owner of two adjacent properties in the City.  Reproduced Record

(R.R.) at 66a.  The first is Scott's personal residence.  *Id.*  The second is the Property,

which was formerly the site of numerous houses but now is a vacant lot.  *Id.* at 66a-

71a.  According to Scott, he uses the Property as a backyard and has been engaging

in a long-term "landscaping" project to maintain it as an open, grassy space. *Id.* at 66a-67a, 76a.

This appeal arises from Scott's landscaping project on the Property, or, more specifically, from the equipment he uses for that project. Scott indicates he built an addition onto his residence and purchased a 12,000-pound excavator (Excavator) to assist with the construction.[1] *Id.* at 67a, 73a. After Scott completed the addition, he stored the Excavator on the Property and continued to use it for landscaping. *Id.* at 67a. The City later sent notices to Scott, including an initial violation dated July 21, 2017, and final warning dated August 31, 2017, that the Property was in violation of the Code. Relevantly, the notices directed Scott to stop storing, or to obtain a permit for storing, all vehicles, construction equipment, and materials on the Property. The notices cited to the administrative provisions of the Code,[2] which indicate that "[a] use registration permit is required for every new use commenced on any land or in any structure except for use as a single-family dwelling." Code § A-301.1.5.

Scott filed a *pro se* appeal to the Board. The Board held a public hearing on June 19, 2018, at which Scott appeared with counsel. Scott testified that he primarily used the Excavator to remove bricks and debris from the Property, and that "I have not used the [E]xcavator for anything commercial whatsoever." R.R. at 67a, 75a-77a. Scott explained the Property "basically consists of fill from torn down houses over the last 50 or 60 years. So almost the entire area of the [P]roperty is brick, and it's very hard to maintain. . . . because the bricks keep coming up . . . ." *Id.* at 66a. He testified that his landscaping work was "just about done," and that he ultimately

---

[1] Pictures of the Excavator appear in the record. *See* R.R. at 17a-18a. The Excavator is a tracked vehicle with a hydraulic arm and a cabin for the operator.

[2] Phila., Pa., Admin. Code (approved Mar. 26, 1997).

planned to sell or "scrap[]" the Excavator. *Id.* at 67a. Specifically, Scott testified he performs this landscaping "on the weekend" and could complete it within "I don't know. A year." *Id.* at 74a.

Following Scott's testimony, the Board voted unanimously to deny his appeal with a 120-day stay of enforcement. *Id.* at 80a. The Board issued a written decision to that effect on June 19, 2018, the same day as the public hearing.[3] In its subsequent findings of fact and conclusions of law, the Board explained that the Excavator was "clearly commercial in nature, regardless of how it is used." *Id.* at 83a. In addition, the Board concluded that the City reasonably determined the storage of construction equipment on residential property requires a permit. *Id.*

Scott appealed to Common Pleas *pro se*. Although the parties filed briefs and participated in oral argument, Common Pleas did not take any additional evidence. In its brief, the City argued for the first time that Scott's storage of the Excavator fell under the "Wholesale, Distribution, and Storage" use category found in the Code's zoning provisions[4] at Code § 14-601(9), which was not permissible in the Property's residential zoning district. The City argued, therefore, that storage of the Excavator was a change of use requiring a permit under Code § A-301.1.5. By order dated and entered November 13, 2019, Common Pleas denied Scott's appeal and affirmed the Board.

Scott appealed to this Court. Common Pleas entered an order directing Scott to file a concise statement of errors complained of on appeal, and Scott complied.

---

[3] The decision denied Scott's appeal with provisos. In addition to the 120-day stay of enforcement, the decision directed that Scott obtain a permit from the City within one year, that all construction must be in accordance with plans that the Board approves, and that a new application and a new public hearing would be required for failure to comply with the foregoing conditions.

[4] Phila., Pa., Zoning Code (approved Dec. 22, 2011).

3

Common Pleas then issued an opinion, in which it accepted the City's argument that storage of the Excavator fell within the "Wholesale, Distribution, and Storage" use category at Code § 14-601(9) and was impermissible in the Property's residential zoning district absent a permit. R.R. at 14a.

Scott now raises several issues for this Court's review. Scott (1) disputes the Board's finding that his Excavator was "commercial in nature" even though he was not using it commercially, (2) argues the Board improperly denied his appeal without citing to or interpreting the zoning provisions of the Code, and (3) levels a series of challenges relating to Common Pleas' reliance on the "Wholesale, Distribution, and Storage" use category at Code § 14-601(9).

## II. Discussion

Common Pleas did not take any additional evidence before ruling on Scott's appeal. Under these circumstances, this Court reviews whether the Board abused its discretion or committed an error of law when rendering its decision. *In re Garcia*, 276 A.3d 340, 347 n.4 (Pa. Cmwlth. 2022) (citing *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014)). We interpret the Code according to the rules of statutory construction. *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014) (citing *Bailey v. Zoning Bd. of Adjustment of the City of Phila.*, 801 A.2d 492, 502 n.19 (Pa. 2002)). Our primary objective is to determine the intent of the Code's drafters. *Bailey*, 801 A.2d at 502 (citing 1 Pa.C.S. § 1921). To fulfill this objective, we must focus on the Code's plain language. *See THW Grp.*, 86 A.3d at 336. The Code "must be construed expansively so as to afford the landowner the broadest possible use and enjoyment of his land." *Id.* (citing *Rabenold v. Zoning Hearing Bd. of the Borough of Palmerton*, 777 A.2d 1257 (Pa. Cmwlth. 2001)). Nonetheless, where the Code is unclear, the Board's interpretation "is entitled to

4

great weight and deference." *Wexford Sci. & Tech., LLC v. City of Pittsburgh Zoning Bd. of Adjustment*, 280 A.3d 1097, 1102 (Pa. Cmwlth. 2022) (citation omitted); *see also In re Chestnut Hill Cmty. Ass'n*, 155 A.3d 658, 667 (Pa. Cmwlth. 2017) (citing *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009)).

Initially, Scott assails the Board's finding that his Excavator was "commercial in nature," even though he did not use it for commercial purposes. Scott's Br. at 8-13. Scott contends that he was using his Excavator for "exclusively non-commercial purposes," and that no contrary evidence exists. *Id.* at 11. According to Scott, the phrase "commercial in nature" does not appear in the Code, and the Board "made this standard up." *Id.* at 12-13. Scott also contends the Board improperly denied his appeal without citing to or interpreting the zoning provisions of the Code. *Id.* at 13. Scott insists the Board simply deferred to the zoning inspector, who did not appear at the hearing. *Id.*

We find instructive this Court's prior decision in *DiMattia v. Zoning Hearing Board of East Whiteland Township*, 168 A.3d 393 (Pa. Cmwlth. 2017). There, two property owners used a garage and driveway for "preparation, repair and transport of race cars." *Id.* at 395. The owners argued this was a permissible accessory use of their property because, in relevant part, "evidence . . . showed that these activities were a hobby, rather than a commercial use . . . ." *Id.* at 399. This Court rejected the owners' argument, explaining that, if their activity did not meet the definition of "accessory use" in the zoning ordinance and case law, it was not permissible, "even if it is a hobby or recreational activity of the property owner and no commercial purpose or economic gain is involved." *Id.* (citation omitted). Similarly, we focus our attention in this matter on whether Scott's storage of the Excavator is permissible

5

under the Code and pertinent case law, rather than Scott's insistence that he never used the Excavator for commercial purposes.

The Code divides the City into a series of zoning districts. Here, Scott does not dispute that the Property is in the Residential Single-Family Attached-5, or RSA-5, district. RSA districts "are primarily intended to accommodate attached and semi-detached houses on individual lots, but may be applied in areas characterized by a mix of housing types, including detached houses. The districts are also intended to provide a density transition between [Residential Single-Family Detached] districts and [Residential Multi-Family] districts." Code § 14-401(1)(c)(.2). The Code lists principal uses allowable in residential districts in Table 14-602-1. Critically, while Table 14-602-1 expressly states certain uses are prohibited, "[w]here use categories and subcategories **are not listed** in a use table, **they are also prohibited**." Code § 14-602(2)(d) (emphasis added).

Applying Table 14-602-1, the Code permits certain uses as of right and others only with a special exception. There is no allegation in this case that Scott requested or received a special exception, so we focus on uses that the Code expressly permits. Permissible uses include single-family housing, passive recreation, family childcare, religious assembly, safety services, transit stations, community gardens, and market or community-supported farms. None of these uses reasonably encompasses Scott's storage of the Excavator on the Property.

It is also important to add that the Code does not permit Scott's storage of the Excavator as an accessory use. The Code provides that accessory uses in residential districts "are permitted in conjunction with allowed principal uses, provided they comply with all applicable regulations . . . ." Code § 14-401(2). The Code defines an "accessory use" as, in relevant part, "[a] use . . . that is subordinate to and on the

same lot as the principal use on a lot and customarily incidental to the principal use." Code § 14-203(2); *see also* Code § 14-604(1)(c)(.3) ("Accessory uses and structures must: . . . be customarily found in association with the principal use or principal structure."). Scott's storage of the Excavator, a 12,000-pound piece of construction equipment, does not satisfy this definition, as it is not "customarily incidental" or "customarily found in association with" any residential principal use allowed in the RSA-5 district. Code §§ 14-203(2), 14-604(1)(c)(.3); *see also DiMattia*, 168 A.3d at 398-400.

Given these provisions, we conclude the Board did not abuse its discretion or commit an error of law by denying Scott's appeal and concluding his storage of the Excavator requires a permit under Code § A-301.1.5. Although Scott argues the Board denied his appeal without adequately analyzing the Code's zoning provisions, our review of the Code supports the Board's decision. Therefore, any inadequacy in the Board's analysis was harmless. *See Grove v. Port Auth. of Allegheny Cnty.*, 218 A.3d 877, 890 (Pa. 2019) (quoting *Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014)) ("Harmless error exists if the record demonstrates either . . . the error did not prejudice the defendant or the prejudice was de minimis[.]").

Scott next levels a series of challenges regarding Code § 14-601(9), on which Common Pleas relied when denying his appeal from the Board. Scott acknowledges he did not raise his issues regarding Code § 14-601(9) in his appeal to the Board, but he explains he could not raise those issues then because the City did not cite to Code § 14-601(9) until his appeal to Common Pleas.[5] Scott's Reply Br. at 1-3. He argues the City waived Code § 14-601(9) by not raising it sooner. Scott's Br. at 14-15. In

---

[5] *See Soc'y Created to Reduce Urb. Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth. 2002) ("If parties do not request that the trial court hear additional evidence, they waive arguments which were not raised before the board.") (citations omitted).

addition, Scott advocates for a broad construction of the Code in his favor. *Id.* at 20-23. Scott asserts that Code § 14-601(9) applies to bulk storage rather than storage of a single piece of equipment, and that reading it otherwise would lead to absurd results. *Id.* at 18-20. Generally, he characterizes Common Pleas' reliance on Code § 14-601(9) as an unconstitutional infringement on his use of the Property due to aesthetic concerns. *Id.* at 18-24. Scott further suggests that his use of the Property predated Code § 14-601(9) and was a legal nonconforming use. *Id.* at 14-17.

Scott's arguments are misplaced. Our standard of review requires us to assess whether the Board committed an abuse of discretion or error of law when it denied Scott's appeal, and the Board did not rely on Code § 14-601(9). Regardless, Code § 14-601(9) merely illustrates the point we already made above—that Scott's storage of the Excavator is not permissible as a principal or accessory use under the Code. Rather, storage of the Excavator more closely resembles commercial and industrial uses that are prohibited in the RSA-5 district, such as "Wholesale, Distribution, and Storage." Some other examples might include "Commercial Vehicle Repair and Maintenance" under Code § 14-601(8)(a), which involves the maintenance of "large construction or agricultural equipment" or "Trucking and Transportation Terminals" under Code § 14-601(10)(i), which involves the "long-term or short-term storage of large vehicles."

Our review does not reveal any use category in the Code that perfectly fits Scott's storage of the Excavator on the Property. The Code's drafters cannot have been expected to envision every inappropriate use of property that might arise. That is why, when a use does not fit squarely within those listed, the Code provides the City with authority to "determine the most similar, and thus most appropriate, use category, subcategory, or specific use type . . . ." Code § 14-601(e)(.2). Indeed, our

8

Supreme Court has explained a zoning ordinance need not "state every conceivable impermissible use," as this would "negate the deference to which a zoning hearing board is entitled in the interpretation of its municipality's zoning ordinances. If . . . unlisted uses are necessarily permitted in a given zoning district, there would be nothing for the zoning hearing board to interpret." *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 902 (Pa. 2019) (citation omitted).[6]

---

[6] Even accepting for the sake of argument that we may consider Scott's remaining constitutionality and nonconforming use claims, they do not entitle him to relief. Establishing residential districts "has long been recognized as a valid exercise of a municipality's police power." *Slice of Life,* 207 A.3d at 889. Our Courts presume zoning ordinances are constitutional, and it is the burden of the party challenging an ordinance to establish its provisions are "arbitrary and unreasonable and bear no substantial relationship to promoting public health, safety and welfare." *Keinath v. Twp. of Edgmont*, 964 A.2d 458, 462 (Pa. Cmwlth. 2009) (citing *McGonigle v. Lower Heidelberg Twp. Zoning Hearing Bd.*, 858 A.2d 663 (Pa. Cmwlth. 2004)). A significant factor when considering the reasonableness of land use restrictions "is whether they are consistent with stated purposes of the particular zoning district." *Id.* (citing *Hock v. Bd. of Supervisors of Mount Pleasant Twp.*, 622 A.2d 431 (Pa. Cmwlth. 1993)). Here, we detect no constitutional infirmity in the use restrictions applicable to the RSA-5 district. This is particularly true given, as we noted above, that the primary purpose of the district is to "accommodate attached and semi-detached houses . . . ." Code § 14-401(1)(c)(.2).

Moreover, Scott is correct that the Code permits nonconforming uses, which are uses that do not comply with the zoning provisions of the Code "because (a) they were established before the adoption of zoning, or (b) they were legal when established but have become nonconforming due to later zoning amendments." Code § 14-305(1). "The burden of establishing the prior existence of a nonconformity is on the applicant." Code § 14-305(4)(d); *see also Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1211 (Pa. Cmwlth. 2009). Though Scott argues his storage of the Excavator predated the Code's current zoning provisions, which became effective in 2012, he makes no effort to argue this storage was "established before the adoption of zoning" or was "legal when established" and became nonconforming later. Code § 14-305(4)(d). That is, Scott alleges the Excavator has remained on the Property since 2003, *see* Scott's Br. at 16 n.4, but he does not explain how the version of the Code existing at that time would have permitted him to store the Excavator. Scott instead relies on case law pertaining to abandonment of nonconforming uses and mistakenly attempts to shift the burden to the City to establish that no nonconformity existed. *Id.* at 16-17 (citing *Faith Presbyterian Church v. Bensalem Twp. Zoning Hearing Bd.*, 538 A.2d 135 (Pa. Cmwlth. 1988)).

### III. Conclusion

Thus, because Scott's arguments do not demonstrate the Board committed an abuse of its discretion or an error of law, we affirm Common Pleas' November 13, 2019 order, which denied Scott's appeal of the Board's decision.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Scott,                          :
                    Appellant       :
          v.                         :     No.  1795 C.D. 2019
                                     :
City of Philadelphia, Department     :
of Licenses and Inspections          :

# **O R D E R**

AND NOW, this 16th day of November 2022, the November 13, 2019 order of the Court of Common Pleas of Philadelphia County, affirming the decision of the Zoning Board of Adjustment, is **AFFIRMED**.


_____
STACY WALLACE, Judge